IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
On Brief September 22, 2010

**MAREY ATEF ABOU-RAHMA, JR. v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Davidson County**
**No. 2005-D-2779, 2983, 3341   J. Randall Wyatt, Jr., Judge**

_____

**No.  M2009-02523-CCA-R3-PC - Filed March 8, 2011**

_____

Based upon the facts in three cases, the Davidson County Grand Jury indicted Petitioner, Marey Atef Abou-Rahma, Jr., for five counts of aggravated robbery, two counts of felony murder, two counts of first degree murder, and two counts of attempted first degree murder. On February 8, 2008, Petitioner pled guilty to two counts of aggravated robbery and two counts of felony murder.  Petitioner was sentenced to two consecutive life sentences for the felony murder convictions and sentenced to two, eight-year sentences for the aggravated robbery convictions to be served concurrently to each other and the life sentences.  On November 24, 2008, Petitioner filed a petition for post-conviction relief arguing among other things that he received ineffective assistance of counsel and that he did not enter his guilty plea voluntarily and knowingly.  After an evidentiary hearing, the post-conviction court denied the petition.  After a thorough review of the record, we affirm the denial of the post-conviction petition.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Affirmed.**

JERRY L. SMITH, J., delivered the opinion of the court, in which DAVID H. WELLES and ROBERT W. WEDEMEYER, JJ., joined.

David M. Hopkins, Nashville, Tennessee, for the appellant, Marey Atef Abou-Rahma, Jr.

Robert E. Cooper, Jr., Attorney General and Reporter; Deshea Dulany Faughn, Assistant Attorney General; Victor S. Johnson, District Attorney General; and Ben Ford, Assistant District Attorney General, for the appellee, State of Tennessee.

# OPINION

## *Factual Background*

The following facts were related at Petitioner's guilty plea hearing:

[T]he proof would have shown that on July 1st of 2005, at approximately 2157 hours at the apartments located at 441 Harding Place, specifically G-6, the victims in this case were relaxing outside that apartment, visiting with one another. They had been out there since 1930 hours. And the people present included Alfredo Vargas Zarco, Gueraldo Domingus, Christino Maciel, Amador Cysto Sasudo. These individuals had been talking and visiting with one another. When they noticed a green Ford Explorer drive past the group, it was at a dead-end, actually, and didn't think much of it. And then, a short time later they noticed several individuals coming back to them and they believed were linked to that car.

The proof would further show that his defendant and the co-defendant, Miles Armstrong, had gone out that evening for the purpose of committing a robbery. Miles Armstrong was in possession of a long shotgun and this defendant was in possession of a handgun. They had approached these individuals, essentially, walking up to them with the intent to commit a robbery. When they came up upon them, Miles Armstrong fired his weapon into the air, the long gun, and this defendant fired his weapon into the crowd.

He, ultimately, caused the death of Alfredo Vargas Zarco and Guerado [sic] Porto Domingus by the – by his – the shots and the injuries sustained. He also caused injuries to two other people present, Amador Cysto Sasudo, and Chrisino [sic] Maciel. There were other persons present, as well, that the state would anticipate calling, in fact, the two survivors. The state would anticipate calling [sic] that these are the facts as they happened. But, actually, no robbery was able to take place. The shooting occurred almost simultaneously as these men came upon them. They, then fled the scene.

The proof would further show that the men's faces were partially covered with various bandanas. The survivors, obviously, contacted the police immediately and were able to give somewhat of a description of the various heights, weights, the car that they had seen earlier and described the events of what happened, including the types of weapons that were used.

Within a very short time, . . . within a matter of several days, the defendant . . . was ultimately, taken into custody . . . . Following a waiver of Miranda Rights . . . [Petitioner] ultimately implicat[ed] himself by indicating that, in fact, he was present when this took place, that he was within ten feet of the actual people . . . .

In October 2005, the Davidson County Grand Jury indicted Petitioner for three counts of aggravated robbery in case number 2005-D-2779; two counts of aggravated robbery in case number 2005-D-2983; and two counts of felony murder, two counts of first degree murder, and two counts of attempted first degree murder in case number 2005-D-3341. On February 8, 2008, Petitioner entered a best interest guilty plea to one count of aggravated robbery in case number 2005-D-2779, one count of aggravated robbery in case number 2005-D-2983, and two counts of felony murder in case number 2005-D-3341. Pursuant to the guilty plea, Petitioner was sentenced to consecutive sentences of life without parole for the felony murder convictions. He was also sentenced to eight years for each aggravated robbery conviction to be served concurrently to each other and concurrently with the life sentences.

On November 24, 2008, Petitioner filed a petition for post-conviction relief. In his petition he argued that he received ineffective assistance of counsel and that he entered his guilty plea unknowingly and involuntarily. The post-conviction court held an evidentiary hearing.

**Post-conviction Evidentiary Hearing**

Petitioner was the first witness at the hearing. He testified that if he had gone to trial, the State would have sought the death penalty. Petitioner stated that the trial counsel did not meet with him enough and did not explain the evidence against him. While his case was pending, Petitioner was the subject of a mental evaluation. He was diagnosed with Schizo Affective Disorder. He was prescribed medication. Petitioner informed trial counsel of his condition. Petitioner testified that on the day he entered his plea, he was not taking his medication. He stated that trial counsel did go over his plea petition with him before he entered his plea. However, he stated that he did not understand one aspect of his plea. He and trial counsel discussed Petitioner being sentenced to DeBerry Special Needs Facility ("DeBerry"), a prison that houses prisoners with medical issues. He understood he was to be sentenced to DeBerry but has not been permanently placed there.

Petitioner also testified that trial counsel did not explain various items in trial discovery in a sufficient manner. He testified that he did not know of questionable evidence in discovery, including conflicting witness statements, before he entered his guilty plea.

Petitioner maintained that had he known about the evidence in discovery he would not have pled guilty. However, Petitioner admitted that he had the discovery in his possession before he entered the guilty plea. Petitioner also stated that he believed trial counsel should have filed a motion to suppress based upon contradictory statements made by a detective. Petitioner was also unhappy that there were no DNA tests on the bandanas used by the shooters.

Petitioner said that trial counsel only met with him one time prior to the entry of his guilty plea. He met with him in the main jail downtown. Petitioner also met with Patrick Wells, a private investigator, working with trial counsel. Mr Wells was responsible for tracking down witnesses. They did not discuss any legal issues.

Petitioner stated that he and trial counsel met twice to discuss the plea bargain. He stated they met in the courthouse and that trial counsel told him it was the best thing. Petitioner had stopped taking his psychiatric medications at that time, but he did not inform trial counsel of that fact. Petitioner stated that because he had stopped taking his medication, he was not thinking clearly. He maintained that had he been thinking clearly, he would not have pled guilty.

On cross-examination, Petitioner admitted that trial counsel had reviewed the plea petition with him. He stated that trial counsel fully explained all aspects of the plea and the consequences of entering the plea. Petitioner agreed that he had had a mental health evaluation. He admitted that trial counsel had explained the results of the evaluation. The results showed that while Petitioner's mental condition could be used as mitigation in sentencing, it was not sufficient to support an insanity defense at trial.

Trial counsel also testified at the hearing. He stated that he represented Petitioner throughout the proceedings in this case. Trial counsel testified that Petitioner informed him that he had been diagnosed with some mental health issues. Trial counsel filed a request to have Petitioner undergo a psychiatric evaluation. The request was granted. The reports generated by the evaluation reflected that Petitioner was suffering from mental illness and that he should continue on medication for his condition. The examining physician determined that Petitioner's mental illness could not support an insanity defense nor a diminished capacity defense. Trial counsel reviewed the reports with Petitioner. Regardless of the evaluation, trial counsel was concerned about Petitioner's mental health. He testified that Petitioner would sometimes be distracted when trial counsel was talking to him. He also stated that Petitioner would become fixated on inconsequential issues. For an example, trial counsel stated that Petitioner became fixated on a witness' statement when the witness said one thing early in the statement but said something different later in the statement. Trial counsel agreed that the witness's statement contained two conflicting statements, however, the differences were in

-4-

no way a material fact. It was an issue upon which there was no basis to justify a suppression or with which to impeach the witness.

Trial counsel stated that he met with Petitioner more than two times. He recalled that he met with Petitioner at the CJC about three or four times; the Hill Detention Center once; and CCA once. Trial counsel stated those are the times he could specifically remember visiting Petitioner in a particular facility, and he met with Petitioner more times than those listed above. Trial counsel testified that he never filed a motion to suppress because he had no basis upon which to file such a motion. When trial counsel discussed Petitioner's conversation with the police, Petitioner had total recall of what he was asked and how he responded. Petitioner did not indicate to trial counsel that he disputed anything the officers said he said, and Petitioner did not indicate to trial counsel that he did not know what he was doing when he spoke with the police. Trial counsel stated that Petitioner told him he wanted to continue to get treatment for his mental illness. Trial counsel told Petitioner that the District Attorney had agreed to recommend to the Court that Petitioner be housed in DeBerry. The District Attorney sent the letter to the trial court, and the trial court in turn contacted the Department of Corrections. However, trial counsel stated that all they could do was recommend that he be housed in DeBerry. Trial counsel, the District Attorney and even the trial court could not promise Petitioner that he could be housed in DeBerry.

On cross-examination, trial counsel stated that he was unaware that Petitioner stopped taking his medication after his evaluation and also did not check with the jail officers to see if Petitioner was taking any medication. He stated that he did not ask because he did not notice a change in Petitioner's demeanor.

On November 24, 2009, the post-conviction court filed a written order denying the petition. The post-conviction court made the following findings:

> The Petitioner first contends that [trial counsel's] counsel was ineffective because he failed to adequately consult with the Petitioner and explain the evidence against him and the options available to him. The Petitioner states in his Amended Petition that he did not receive the State's response to discovery from [trial counsel] nor did [trial counsel] discuss the details of the guilty plea with him. The Court finds that the Petitioner's own testimony in this hearing contradicts both of these claims since he admitted to having the discovery and to going over the details of the plea agreement with [trial counsel]. The Court finds that [trial counsel] adequately explained to the Petitioner the evidence against him and his available options. The Court therefore finds that the Petitioner has failed to demonstrate particular

inadequacies through clear and convincing evidence. This issue is without merit.

The Petitioner next contends that [trial counsel's] counsel was ineffective because he failed to obtain housing for the Petitioner at the DeBerry facility as [trial counsel] promised he would. The Court credits [trial counsel's] testimony and, in reviewing the plea transcript, finds that the Petitioner was advised from multiple sources, including [trial counsel], the State, and even this Court during his plea of guilty that none of the parties present claimed to exercise control over the Tennessee Department of Corrections. The Court finds that the Petitioner was present for these conversations and understood that each parties' participation in attempting to obtain housing for the Petitioner in the DeBerry facility would be a recommendation only. The Court therefore finds that the Petitioner has failed to demonstrate that [trial counsel] promised him that the Petitioner would definitely be housed in the DeBerry facility. This issue is without merit.

The Petitioner next contends that [trial counsel's] counsel was ineffective because he failed to file a motion to suppress the Petitioner's statements to police. The Court credits [trial counsel's] testimony and finds that he pursued this avenue of suppression in defense of the Petitioner even though he never filed a motion. The Court finds that ultimately the Petitioner's medical reports in conjunction with the observations from the recorded interview with police made it clear to [trial counsel] that a suppression motion would be baseless and unsuccessful. This Court will not undertake to second guess [trial counsel's] failure to submit a suppression motion does not constitute action below the range of competence of an attorney in a criminal case. This issue is without merit.

The Petitioner next contends that [trial counsel's] counsel was ineffective because he failed to recognize that the Petitioner was not taking his medication at the time he entered his guilty pleas, thereby negating his understanding of the ramifications of his plea. The Court has reviewed the transcript of the guilty plea and finds that the Petitioner demonstrated an understanding of the Court's directions during his guilty plea. The Court also finds that , even if the Petitioner failed to comprehend parts of what the Court directed because he was not on medication, there was no action on the part of [trial counsel] that contributed to this disconnect. The Court finds that the Petitioner testified , and [trial counsel] confirmed, that both the Petitioner and [trial counsel] understood that the Petitioner was on strong medication to

control his psychotic problems but that [trial counsel] was unaware that at the time of the plea of guilty the Petitioner had stopped taking his medication. The Court finds that [trial counsel] cannot be punished for failing to address a problem he was unaware of and that his inaction is not below the range of competence of an attorney in a criminal case. This issue is therefore without merit.

The Petitioner also appears to argue that [trial counsel] should not have permitted him to plead guilty at all because of the Petitioner's mental health problems. The Court finds that [trial counsel] was able to obtain a plea offer that permitted the Petitioner to avoid facing the death penalty. The Court finds that to *prohibit* his client from entering such a plea because there were reservations about his full mental capacity, thereby possibly subjecting him to execution, would assuredly have constituted ineffective assistance. The Court therefore finds that [trial counsel's] actions in this respect are not below the range of competence of an attorney in a criminal case. This issue is without merit.

[emphasis in original]

Petitioner filed a timely notice of appeal from the denial of his petition.

## ANALYSIS

On appeal, Petitioner argues that he received ineffective assistance of counsel. He argues that trial counsel: (1) did not go over the State's discovery with him; (2) did not discuss alleged discrepancies in witness statements; (3) did not request DNA testing; (4) did not discuss the possibility of filing a motion to suppress; (5) advised Petitioner that he was going to serve his sentence in DeBerry; and (6) did not realize that Petitioner was not taking his medication and that Petitioner was not competent to plead guilty.

The post-conviction court's findings of fact are conclusive on appeal unless the evidence preponderates otherwise. *See State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999). During our review of the issues raised, we will afford those findings of fact the weight of a jury verdict, and this Court is bound by the post-conviction court's findings unless the evidence in the record preponderates against those findings. *See Henley v. State*, 960 S.W.2d 572, 578 (Tenn. 1997); *Alley v. State*, 958 S.W.2d 138, 147 (Tenn. Crim. App. 1997). This Court may not reweigh or re-evaluate the evidence, nor substitute its inferences for those drawn by the post-conviction court. *See State v. Honeycutt*, 54 S.W.3d 762, 766 (Tenn. 2001).

However, the post-conviction court's conclusions of law are reviewed under a purely de novo standard with no presumption of correctness. *See Shields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001).

## Voluntariness of Guilty Plea

When analyzing a guilty plea, we look to the federal standard announced in *Boykin v. Alabama*, 395 U.S. 238, 89 S. Ct. 1709 (1969), and the State standard set out in *State v. Mackey*, 553 S.W.2d 337 (Tenn. 1977). *State v. Pettus*, 986 S.W.2d 540, 542 (Tenn. 1999). In *Boykin*, the United States Supreme Court held that there must be an affirmative showing in the trial court that a guilty plea was voluntarily and knowingly given before it can be accepted. *Boykin*, 395 U.S. at 242. Similarly, our Tennessee Supreme Court in *Mackey* required an affirmative showing of a voluntary and knowing guilty plea, namely, that the defendant has been made aware of the significant consequences of such a plea. *Pettus*, 986 S.W.2d at 542.

A plea is not "voluntary" if it results from ignorance, misunderstanding, coercion, inducements, or threats. *Blankenship v. State*, 858 S.W.2d 897, 904 (Tenn. 1993). The trial court must determine if the guilty plea is "knowing" by questioning the defendant to make sure he fully understands the plea and its consequences. *Pettus*, 986 S.W.2d at 542; *Blankenship*, 858 S.W.2d at 904.

## Ineffective Assistance of Counsel

When a petitioner seeks post-conviction relief on the basis of ineffective assistance of counsel, the petitioner bears the burden of showing that (a) the services rendered by trial counsel were deficient and (b) that the deficient performance was prejudicial. *See Powers v. State*, 942 S.W.2d 551, 558 (Tenn. Crim. App. 1996). In order to demonstrate deficient performance, the petitioner must show that the services rendered or the advice given was below "the range of competence demanded of attorneys in criminal cases." *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). In order to demonstrate prejudice, the petitioner must show that there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. *See Strickland v. Washington*, 466 U.S. 668, 694, 104 S. Ct. 2052, 80 L.Ed.2d 674 (1984). "Because a petitioner must establish both prongs of the test to prevail on a claim of ineffective assistance of counsel, failure to prove either deficient performance or resulting prejudice provides a sufficient basis to deny relief on the claim." *Henley v. State*, 960 S.W.2d 572, 580 (Tenn. 1997).

As noted above, this Court will afford the post-conviction court's factual findings a presumption of correctness, rendering them conclusive on appeal unless the record

preponderates against the court's findings. *See id.* at 578. However, our supreme court has "determined that issues of deficient performance by counsel and possible prejudice to the defense are mixed questions of law and fact . . .; thus, [appellate] review of [these issues] is de novo" with no presumption of correctness. *Burns*, 6 S.W.3d at 461.

Furthermore, on claims of ineffective assistance of counsel, the petitioner is not entitled to the benefit of hindsight. *See Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. 1994). This Court may not second-guess a reasonably-based trial strategy, and we cannot grant relief based on a sound, but unsuccessful, tactical decision made during the course of the proceedings. *See id.* However, such deference to the tactical decisions of counsel applies only if counsel makes those decisions after adequate preparation for the case. *See Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

Once a guilty plea has been entered, effectiveness of counsel is relevant only to the extent that it affects the voluntariness of the plea. In this respect, such claims of ineffective assistance necessarily implicate the principle that guilty pleas be voluntarily and intelligently made. *See Hill v. Lockhart*, 474 U.S. 52, 56, 106 S. Ct. 366 (1985) (citing *North Carolina v. Alford*, 400 U.S. 25, 31, 91 S. Ct. 160 (1970)). As stated above, in order to successfully challenge the effectiveness of counsel, Petitioner must demonstrate that counsel's representation fell below the range of competence demanded of attorneys in criminal cases. *See Baxter*, 523 S.W.2d at 936. Under *Strickland v. Washington*, 466 U.S. 668, 694, 104 S. Ct. 2052 (1984), Petitioner must establish: (1) deficient representation; and (2) prejudice resulting from the deficiency. However, in the context of a guilty plea, to satisfy the second prong of *Strickland*, Petitioner must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59; *see also Walton v. State*, 966 S.W.2d 54, 55 (Tenn. Crim. App. 1997).

When making its findings, the post-conviction court accredited the testimony of trial counsel with regard to Petitioner's argument that trial counsel did not explain the case sufficiently as far as the State's discovery, alleged witness statement discrepancies, and DNA testing. The post-conviction court found that Petitioner himself testified that he had the discovery materials and that trial counsel had explained all aspects of the plea to him. In addition, trial counsel testified that he met with Petitioner several times and fully discussed the guilty plea. He stated that in preparation for trial Petitioner became fixated on what he perceived as discrepancies when comparing one witness's statements. However, the discrepancy was not a material fact.

Petitioner argues that trial counsel erred in failing to request DNA tests. Trial counsel stated that the police concluded that there were no items containing DNA. They looked, but

they did not find anything. The post-conviction court accredited this testimony. We find no evidence to preponderate against these facts.

As for the motion to suppress, the post-conviction court found that the trial counsel's testimony with regard to this issue was credible. According to trial counsel, a motion to suppress would have been baseless and unsuccessful. We have found no evidence to preponderate against this finding.

Petitioner argues that his plea was entered unknowingly because he did not realize he might not be housed in DeBerry. The post-conviction court found that Petitioner was advised by trial counsel, the State, and the trial court that they had no control of the Department of Corrections's decision over where to house him. The post-conviction court once again accredited the testimony of trial counsel and concluded that trial counsel had indeed advised Petitioner of the steps taken to request that Petitioner be housed in DeBerry. As stated above, the conclusions of the post-conviction court are conclusive on appeal. *Burns*, 6 S.W.3d at 461. We find no evidence in the record to preponderate against this finding.

Petitioner also argues that trial counsel was ineffective because he allowed Petitioner to plead guilty even though he was suffering from mental illness. Trial counsel obtained a mental evaluation for Petitioner. The results were that Petitioner was mentally ill, but the illness was not so severe as to support an insanity or diminished capacity defense. Trial counsel testified that he knew of Petitioner's diagnosis and that he had been prescribed medication for his illness. Trial counsel did not notice a change in Petitioner's demeanor and had no idea that Petitioner had stopped taking his medication.

As stated above, the post-conviction court accredited the testimony of trial counsel. We have found no evidence in the record to preponderate against the findings of the post-conviction court. We conclude that Petitioner has not proven the first prong under the *Strickland* test, that the services rendered by trial counsel were deficient. It is clear from the record that trial counsel was adequately prepared and met with Petitioner several times to discuss the case. Trial counsel had to make tactical decisions, but all were based upon adequate preparation.

Therefore, we conclude that trial counsel's representation was not deficient.

## CONCLUSION

For the foregoing reasons, we affirm the post-conviction court's denial of the petition for post-conviction relief.

_____
JERRY L. SMITH, JUDGE